

**/S/ RUSS KENDIG**

Russ Kendig
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 |
| | ) | |
| JAMES EDWIN GEIGER, II, | ) | CASE NO. 09-62433 |
| | ) | |
| Debtor. | ) | JUDGE RUSS KENDIG |
| | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| | ) | **(NOT INTENDED FOR** |
| | ) | **PUBLICATION)** |

On September 3, 2009, chapter 13 trustee Toby L. Rosen (hereafter "Trustee") filed an objection to confirmation of Debtor's plan. According to Trustee, the commitment period for Debtor should be sixty months, not thirty-six. Debtor disagrees. A hearing was held on March 24, 2010. The parties filed joint stipulations of fact on April 7, 2010, as well as briefs in support of their respective positions.

The court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1334 and the general order of reference entered in this district on July 16, 1984. Venue in this district and division is proper pursuant to 28 U.S.C. § 1409. The following constitutes the court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

## FACTS

Debtor filed a chapter 13 petition on June 16, 2009. Debtor is the sole

shareholder of Geiger Trucking Company, Inc. (hereafter "Corporation"), an S corporation organized under the laws of the State of Ohio.[1] Although the corporation files corporate tax returns, it follows virtually no other corporate formalities: there are no officers, no corporate bank accounts, no liability insurance with the corporation as the insured party, no corporate books or minutes of corporate meetings, no business stationery, etc. Additionally, most of the assets used in the Corporation's business are titled in Debtor's name. All monies from the business are deposited into Debtor's personal account, from which corporate and personal obligations are paid. Debtor receives revenue from operation of the business in his name, as well as invoices for business expenses. There is minimal separation of Corporate and personal affairs.

Debtor's amended B22C, filed on November 17, 2009, establishes a three year commitment period. To arrive at the $3,883.00 per month figure, Debtor took the average of the Corporation's gross receipts for the six months prior to the filing, less business expenses, to calculate the Corporation's net income and reported this as "Sub S Income" on line 19 of Form B22C. His annualized current monthly income is $46,596.00 which is below median for a household of two in Ohio, thereby establishing the three year commitment period. Debtor's net income on Schedule I is $4,320.00.[2] The Statement of Financial Affairs indicates Debtor's year to date gross income at the time of filing was $84,000.00. The figures comport with the employee income records submitted by Debtor. Based on Attachment A to Schedule I, Debtor's reported year-to-date gross income, and the employee income records submitted by Debtor, gross receipts could range from $156,000.00 to $209,000.00 for the year 2009.

The 2008 federal income tax return for Corporation shows gross receipts of $249,145.00. The line item for salaries and wages is $38,384.00. Ordinary business income totals $61,532.00. The record does not contain any individual tax returns.

## BACKGROUND

Trustee cited several bankruptcy code provisions as foundations for her objection, including 11 U.S.C. §§ 1325(a)(1), 1325(a)(3), 1322(a)(1) and 1325(b)(1)(B).[3] Trustee believes Debtor is required to commit to a sixty month plan. According to Trustee, Debtor's near complete disregard for the corporate formalities lends itself to an alter ego theory. First, Trustee wants the court to ignore the corporate form and treat Debtor as though he were a sole proprietor. If accepted, Trustee posits that Debtor is required to utilize his gross receipts on Form B22C which will result in requiring Debtor to commit to a sixty month plan.

Debtor counters, arguing against Trustee's alter ego theory. Debtor claims there is no basis to compel the court to ignore the corporate form and treat it as a sole proprietorship. In the event Trustee succeeds on her argument, Debtor contests her

---

[1] The asset was not listed on Debtor's schedules.

[2] Debtor is still below median if this figure is extrapolated for one year.

[3] And not one provision is cited in her brief in support of the objection.

contention that gross receipts should be used in the means test calculations.

It is undisputed that Corporation is an S corporation. This is an Internal Revenue Service designation that offers an escape from double taxation as a C corporation. Instead of taxing both the income at the corporate level and the income distributed to shareholders, the income in an S corporation flows directly to the shareholder(s) and is taxable only at that level. S corporation status has limitations, including limitations on the number of shareholders. S corporation status would also provide certain limited liability protections to owners.

As the sole shareholder of Corporation, the corporate income flows through to Debtor. Upon review of the 2008 Corporate 1120S tax return, there are two figures which may be meaningful for the purposes of the objection to confirmation: the salary and wage figure of $38,384.00 (line 8) and the ordinary business income figure of $61,532.00 (line 21). With regard to the first number, the record does not indicate whether Debtor employs other in his business operations, so it is not clear if this salary figure was paid to Debtor or to a third party. However, the $61,532.00 in business income flows through to Debtor as income. This figure is significantly higher than that listed on the B22C and, if utilized, would have resulted in Debtor being over the median income. However, based on the figures before the Court, it appears Corporation's gross receipts declined into 2009. None of the figures provided by Debtor are disputed. Trustee is not claiming Debtor miscalculated figures, but used the wrong figures entirely.

## LAW AND ANALYSIS

I.   **Piercing the Corporate Veil/Alter Ego Theory**

The Court rejects Trustee's attempt to overlook the corporation framework and treat Debtor as a sole proprietor. Piercing the corporate veil is a remedy for persons harmed by the misconduct of shareholders/officers/directors of a corporation: "the 'veil' of the corporation can be 'pierced' and individual shareholders held liable for corporate misdeeds when it would be unjust to allow the shareholders to hide behind the fiction of the corporate entity." Belvedere Condominium Unit Owners' Assoc. v. R.R. Roark Co., Inc., 67 Ohio St.3d 274 (1993). Trustee's argument fails because Debtor has not used his control of the Corporation in such a way as to open the door for personal liability. As the Belvedere court found:

> We hold that the Association did not introduce
> sufficient evidence to pierce RERC's corporate
> veil and reach Roark individually. The Associa-
> tion did not introduce any evidence that Roark
> used his control over RERC in such a manner as
> to defraud the Association. Neither the trial testi-
> mony presented by the Association nor the stipula-
> tions agreed to by the parties even suggested that
> Roard, personally, used his influence to defraud
> or injure the Association or its members. The evi-
> dence cited by the court of appeals below clearly
> shows that Roark did exercise control over RERC,

> but mere control over a corporation is not in itself
> a sufficient basis for shareholder liability.

Id. at 289.

In a subsequent case, the Ohio Supreme Court specifically rejected the suggestion that mere misconduct or unjust action satisfied one of the elements of the test for piercing the corporate veil. The court took a minority position and determined that "to fulfill the second prong of the Belvedere test . . . the plaintiff must demonstrate that the defendant shareholder exercised control over the corporation in such a manner as to commit fraud, an illegal act, or similarly unlawful act." Dombroski v. Wellpoint, Inc., 119 Ohio St.3d 506, 513 (2008). The court used terms including "egregious shareholder misdeeds" and "egregious wrongs" and "extreme shareholder misconduct" to describe the non-fraudulent or legal acts that could satisfy this elements. Id.

Trustee is aware of incongruity of application of the doctrine to the facts of this case: "The Trustee recognizes that a literal piercing of the corporate veil is not applicable here, and she is not arguing that the creditors should be able to hold the debtor personally liable for his company's debts." (Trustee's Brief in Support of Obj. to Conf. at 3). In spite of this recognition, she cites no authority for piercing the corporate veil in a situation similar to that presented here. These failures, coupled with the pronouncements from the Ohio Supreme Court outlined above, compel the court to agree with Debtor. Trustee alleged no fraud or misconduct of the nature envisioned in Dombroski, providing no basis to pierce the corporate veil. The court refuses to disregard the corporate form and treat Debtor as a sole proprietorship.

## II.  The Means Test

With the corporate form intact, the court now turns to the argument about the appropriate income figures to use in the means test calculations. Under Debtor's view, the net income that flows through from the Corporation, which is the gross receipts less expenses, is the applicable figure. Trustee argues that a business debtor's income for the means test is gross receipts, not gross receipts less expenses. If Trustee's position is accepted, the business expenses cannot be deducted until "below the line" – after the commitment period is determined. The result would force Debtor into a sixty month plan, not a thirty-six month plan.

The means test is a formulation of 11 U.S.C. § 707(b)(2). The first part of the form, titled "Report of Income," calculates a debtor's "current monthly income" (hereafter "CMI"). CMI is defined as "the average monthly income from all sources that the debtor receives . . . without regard to whether such income is taxable income, derived during the 6-month period ending [specified dates]." 11 U.S.C. § 101(10A). Using this definition, there is a strong textual argument that the gross receipts are not income to debtor because he does not receive them because the income belongs to Corporation. Debtor "receives" only the net income or profit, the flow-through from the S corporation.

In support of her argument, Trustee cites both In re Cole, Case No. 08-34909 (Bankr. N.D. Ohio March 16, 2009) (unpublished), and Drummon v. Wiegand (In re Wiegand), 386 B.R. 238 (B.A.P. 9th Cir. 2008). Neither case is particularly helpful to

Trustee. First, first are factually distinguishable. Cole involved a debtor with wage income as well as rental/real property income; Wiegand was a "self-employed" debtor with a trucking business. There is no indication either case involved a debtor with an S corporation; rather, it appears that debtors were dba entities or sole proprietors. As such, the holdings that business expenses are taken "below the line" do not control in this case.

As the objecting party, Trustee bears the initial burden of proof. *See, e.g.* In re Marchionna, 393 B.R. 512 (Bankr. N.D. Ohio 2008) (citations omitted). Once this burden is satisfied, the burden shifts to debtor to prove the plan comports with the confirmation requirements. Id. The court finds that Trustee has failed to meet her initial burden of proof on her objection. First, the corporate form is intact. Second, the cases Trustee relies on are factually distinguishable. As stated above, there are two ways to take income from an S corporation: either through employee earnings (wages and salaries) or by the flow-through of net income. Debtor's figures employ the latter figure and there is no dispute over the accuracy of the figures utilized. Considering Trustee has proffered no legal or factual support for her position, the court finds no error in Debtor's use of the flow-through income from Corporation, and not gross receipts, on the means test.

In light of the above, the court will overrule Trustee's objection to confirmation of Debtor's plan. The court will not confirm the plan until it is clear whether Debtor also receives income as an employee of the company, or whether the business expense deduction for employee wages by Corporation is to pay non-Debtor employees.

An appropriate order will be issued immediately.

**Service List**:

Toby L. Rosen
Charter One Bank Building, 4th Floor
400 W. Tuscarawas St.
Canton, OH 44702

Donald M. Miller
1400 Market Ave., N.
Canton, OH 44714-2608